UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JEROME HADLEY | ) | |
| | ) | |
| v. | ) | No. 1:02-CR-147/1:10-CV-36 |
| | ) | |
| UNITED STATES OF AMERICA | ) | Judge Curtis L. Collier |
| | ) | |

## **MEMORANDUM**

*Pro se* petitioner Jerome Hadley ("Hadley") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 69). Pursuant to the Court's order, the Government filed a response in opposition to Hadley's motion (Court File No. 74).

The underlying criminal case in this Court is *United States of America v. Jerome Hadley*, Criminal Docket Number 1:02-CR-147, filed on August 29, 2002. The motions, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[1] will be **DENIED** for lack of merit (Court File No. 69).

**I.    BACKGROUND**

    **A.    Factual Background**

On the night of May 24, 2002, and into the morning of May 25, Hadley and his wife Pattia

---

[1] In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Hadley's conviction in Criminal Docket No. 1:02-CR-146, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 69").

were having a party. That night, a friend of Pattia's called 911 reporting an assault in progress. Chattanooga Police Officer Tyrone Williams responded to the call. While he was on his way to the scene, a second call was made reporting the same incident. A second officer, Alicia Jenkins, also responded to the call, and Officers Jenkins and Williams arrived at the Hadley residence around the same time. Both officers testified Pattia ran out of her front door yelling, "He has a gun" and "he's going to kill me." Officer Jenkins testified Pattia stated her husband put a gun to her head.

Officers entered the residence and identified Hadley. Hadley denied any knowledge of a firearm. Pattia, however, informed officers there was a gun in the bedroom. After an initial unsuccessful search of the bedroom, Pattia accompanied the officers and located the firearm herself, which was in an armoire. The officers then arrested Hadley, and sought a written statement from Pattia. Pattia provided a written statement that Hadley held a gun to her head and told her he was going to kill her.

### B. Procedural History

On September 25, 2002, a federal grand jury indicted Hadley in a one-count indictment, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Hadley's case went to trial on November 12 and 13, 2002. Both officers testified at the trial. When Officer Williams began to testify to Pattia's statements, defense counsel objected to the statement as hearsay. The Court overruled the objection, concluding the statements were admissible as excited utterances under Fed. R. Evid. 803(2). Defense counsel repeated this objection when Officer Jenkins testified to the same statements, which the Court again overruled. However, the Court sustained an objection to Pattia's written statement. The Government then offered evidence of two recorded jail phone calls, purportedly made by Hadley. The Court sustained an objection to one of

2

these calls but admitted the other. In the admitted phone call, Hadley attempted to convince his wife not to "go along with what the DA is saying." The Government rested.

Defense counsel argued for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, which the Court denied. Hadley then presented two witnesses from the party, both of whom testified to witnessing the Hadley's argument but not seeing any weapons. The second witness, Hadley's brother, testified Hadley did not own a firearm. Hadley's brother did admit he was aware Pattia owned one. The defense then rested after stipulating Hadley had previously been convicted of a felony. After twenty-five minutes of deliberation, the jury found Hadley guilty.

On March 21, 2003, Hadley's sentencing hearing began. Because Hadley had three prior felonies that would qualify him for armed career criminal status, the Court was moved to consider the issue whether the instant offense involved "us[ing] or possess[ing] the firearm . . . in connection with . . . a crime of violence" under USSG § 4B1.4(b)(3)(A). The Government pointed to evidence offered at trial, namely the officers' testimony regarding Pattia's statements. Hadley called Pattia to the stand, who testified to not remembering much of what happened the night of the offense or what she told the officers. She claimed she had never seen Hadley holding a gun, and although she "felt something" against her head, she just "assumed" it was a gun. On cross-examination, the Government confronted Pattia with her testimony before the grand jury. After she expressed unease with further testifying without a lawyer, the Court continued the sentencing hearing. On June 6, 2003 the hearing continued, and Pattia repeated her denial she had ever seen a gun in Hadley's hand. Hadley then testified he was unaware the gun was present in the house and denied ever using it.

The Court concluded Hadley did use the gun in a crime of violence, in this case, aggravated

assault, and discounted Pattia's testimony as implausible, noting she never outright denied her prior testimony, but merely claims not to remember what was said. Finding Hadley qualified for armed career criminal status, the Court determined Hadley's Guidelines offense level was 34 and his criminal history category was VI. The resulting Guidelines range was 262 to 327 months. The Court sentenced Hadley at the bottom of the range to a term of 262 months in prison.

Hadley appealed both his conviction and his sentence. On appeal, the Sixth Circuit considered whether the Court erred in admitting Pattia's statements as excited utterances, whether the intervening Confrontation Clause decision *Crawford v. Washington*, 541 U.S. 36 (2004) was implicated, whether the recorded telephone call violated Hadley's Sixth Amendment right to counsel, and whether the Court erred when it concluded at sentencing Hadley possessed a firearm in connection with a crime of violence. The Sixth Circuit upheld Hadley's conviction, but vacated his sentence and remanded for resentencing in light of *United States v. Booker*, 543 U.S. 828 (2005). The Court held a resentencing hearing on April 9, 2007, at which it imposed the same sentence. Hadley appealed his new sentence, which was upheld by the Sixth Circuit on April 16, 2009. Hadley timely filed the instant motion pursuant to 28 U.S.C. § 2255 on February 22, 2010.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden

of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III. DISCUSSION

Hadley premises his motion on three separate grounds but he essentially makes two interrelated arguments: (1) both his trial and appellate counsel provided ineffective assistance of counsel; and (2) he is actually innocent of the offense. He bases these claims on Pattia's testimony at sentencing to the effect she did not actually see him hold a firearm, and his insistence he was unaware of the firearm in his armoire. The Court rejects both grounds for overturning his conviction,

and will address each in turn.

A. **Ineffective Assistance of Counsel**

Hadley argues he was denied effective assistance of counsel at trial, after trial, and on appeal. Specifically, he argues trial and appellate counsel should have argued the Government failed to establish all the elements of his offense, and should have raised the issue of his innocence based on his wife's testimony at sentencing. The Court rejects each argument.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the

6

standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

As an initial matter, Hadley cites *United States v. Cronic*, 466 U.S. 648 (1984). The Supreme Court in *Cronic* noted there are certain cases where the circumstances surrounding the prosecution "are so likely to prejudice the accused" that he is entitled to a presumption of prejudice. Those situations include "a complete denial of counsel" at a critical stage, when defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," and when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance." *Id.* at 659-660; *see also Johnson v. Bradshaw*, 205 F. App'x 426, 430 (6th Cir. 2007) (discussing *Cronic*).

7

The Court, however, must also consider the factors outlined in *Cronic*: "(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." 466 U.S. at 652; *see also Fuller v. Sherry*, 405 F. App'x 980, 988 (6th Cir. 2010).

The Court concludes this case is not one that gives rise to a presumption of prejudice. The record reflects counsel was thorough and active in defending Hadley. There is no suggestion he did not conduct an investigation; indeed, he called two witnesses from the Hadleys' party in his client's defense. Moreover, he did in fact move under Rule 29 for judgment of acquittal, on the basis the Government failed to prove its case. There is no suggestion counsel inadequately prepared, was inexperienced, or was otherwise encumbered in investigation and presentation of Hadley's defense. Hadley instead focuses on counsel's failure to present certain arguments before the jury and make certain arguments before the Court. There is simply nothing in the record, nor does Hadley identify anything in the record, to suggest the circumstances of this case should create a presumption of prejudice.

### 1. Failure to Argue Insufficient Evidence

The Court first addresses Hadley's argument both trial and appellate counsel should have argued the evidence presented at trial was insufficient to sustain his conviction. Hadley splits the analysis between actual and constructive possession, but the Court concludes the analysis is intertwined and will consider the sufficiency issue as a single argument. Under the traditional *Strickland* test, the Court concludes Hadley has failed to establish prejudice. Indeed, the Sixth Circuit on appeal specifically found the evidence presented at trial was sufficient to establish constructive possession, and that constructive possession was sufficient evidence to support a

8

conviction.

> [E]ven if the district court had excluded all of Mrs. Hadley's statements to the police on the night of Defendant's arrest, the evidence still would have been sufficient to sustain Defendant's felon-in-possession conviction under a theory of constructive possession. "Evidence of constructive possession suffices to satisfy the requirement under § 922(g)(1) of proof that a defendant possessed a firearm," and constructive possession, in turn, "exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (internal quotation marks and citations omitted), *cert. denied*, 525 U.S. 1166, 119 S.Ct. 1085, 143 L.Ed.2d 86 (1999). Moreover, "constructive possession may be proved by direct or circumstantial evidence," and "it need not be exclusive but may be joint." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973).
>
> The undisputed record in this case shows that the firearm that formed the basis for the felon-in-possession charge was found in a drawer of an armoire that was located in a bedroom shared by Defendant and his wife. A finding of constructive possession may properly rest upon "[p]roof that the person has dominion over the premises where the firearm is located." *Kincaide*, 145 F.3d at 782 (internal quotation marks and citation omitted); *see also United States v. Layne*, 192 F.3d 556, 572 (6th Cir. 1999), *cert. denied*, 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000); *United States v. Shores*, No. 02-6476, 2004 WL 690163, at *3 (6th Cir. Mar. 30, 2004) (finding that the defendant's constructive possession of a firearm was established through evidence that the gun was found in the defendant's bedroom, "a room in a house over which he had dominion and control"). At a minimum, then, the evidence would have permitted the inference that Defendant had constructive possession, if perhaps only jointly with his wife, over a weapon kept in the couple's bedroom.

*United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005). The court also rejected the evidence presented at sentencing that Hadley did not know the gun was in his room because it was not presented at trial, and considered the evidence implausible in light of his brother's knowledge of the gun, the gun holster in plain view, and the placement of the gun in a drawer rather than hidden away.

Hadley, however, argues constructive possession was not established at trial. His argument relies on the fact no evidence was presented he lived at the residence continuously. He argues he only lived their intermittently, when he and his wife were "compatible," and his counsel was

9

ineffective for failing to present this at trial and on appeal. He also argues there was no evidence he intended to exercise dominion and control over the firearm. The Court first notes the Sixth Circuit concluded on appeal the evidence presented at trial was sufficient, without the missing evidence Hadley now stresses, to establish constructive possession. Moreover, the Court concludes evidence presented at trial was sufficient to establish *actual* possession; namely, the officers' testimony regarding Pattia's statement upon their arrival as well as the discussion between Hadley and Pattia recorded over the prison telephone was sufficient evidence to conclude Hadley actually possessed a firearm. *See, e.g.*, *United States v. Arnold*, 486 F.3d 177, 182-83 (6th Cir. 2007) ("Numerous cases hold that evidence not unlike the evidence presented here–eyewitness testimony describing a firearm actually possessed by the defendant that matches a firearm later recovered by the police–sufficiently connects the gun described to the gun found. And indeed most of these cases involve connections far more attenuated than the one here."). He has therefore not established prejudice for his trial and appellate counsel's failure to raise this issue.

The Court further notes Hadley's arguments are commonly rejected in similar cases. *See, e.g.*, *United States v. Malone*, 308 F. App'x 949, 953 (6th Cir. 2009) (rejecting defendant's argument he did not "consistently reside" at the residence where a gun was located in part because his mother testified he was not just a "casual visitor"); *United States v. Craven*, 478 F.2d 1329, 1333-34 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977) (holding constructive possession was established where evidence suggested the defendant was sleeping in the room where the gun was located and shirts monogrammed with his initials were located in the room). Although Hadley may not have *always* resided in the residence, he was clearly residing there at the time the gun was located. Given he was more than just a "casual visitor" and

was admittedly living at the residence when the offense occurred, his argument has little merit.

Hadley also places significant emphasis on *United States v. Birmley*, 529 F.2d 103 (6th Cir. 1976). In that case, three individuals were arrested in a vehicle containing stolen weapons in its trunk. The court upheld the convictions of the owner of the vehicle and the driver who possessed the key to the trunk at the time of their arrest under a theory of constructive possession. The court did, however, overturn the conviction of a third passenger who was merely sitting in the rear seat of the vehicle, concluding "[m]ere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm." *Id.* at 107-08. Defendant points to *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009) and the cases cited therein for the same proposition. In that case, the Sixth Circuit overturned the conviction of a defendant who was arrested with a loaded gun found underneath his seat in a stolen car.

However, significantly more persuasive evidence existed in Hadley's case. He was resident of the house in which the gun was located. Although he now argues he only lived at the house intermittently, he lived there at the time of the offense. Moreover, a gun holster was in the bedroom in plain view and the firearm itself was in a drawer of the armoire. Finally, and most persuasive, Pattia had informed officers she saw Hadley with the very firearm at issue. *See United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007) (upholding conviction where a witness reported the defendant had threatened her with a gun minutes before the gun was found beneath the defendant's seat). Because the Sixth Circuit concluded evidence was sufficient to sustain Hadley's conviction, and Hadley's arguments the evidence was insufficient are unavailing, he has not established prejudice as a result of alleged ineffective assistance of counsel.

Hadley also fails to show deficient performance. Hadley's trial counsel did, in fact, move

11

under Rule 29. Hadley concedes this argument was made, but contends, "[T]rial counsel was ineffective for failing to specifically present and argue the critical theory of the government proving active [sic] and constructive possession of a firearm beyond a reasonable doubt, and its requirements" (Court File No. 70, p. 8). Hadley's counsel in fact made this very argument.

> At this time, Your Honor, I don't believe that the government has proven any sort of case. They have not brought forth anybody that either saw the client – saw my client with the gun, either direct possession, or anybody that states that he knew about the gun or had the gun. They've brought forth – the witnesses they put up there, the officers, basically got all their information from hearsay, in this case from Mrs. Hadley. They put on the tape of a discussion between Mrs. Hadley and Mr. Hadley. In this case, Your Honor, they have to show that my client had possession of the firearm that's now in front of the Court. And, Your Honor, whenever the police went in there – I remind the Court the testimony is, when the police went in there, they asked him if he knew where it was, he said he didn't know where it was. Mrs. Hadley had to get them there. Whenever they found the gun, they checked for prints, didn't find any latent prints on this, from my client or from anybody else, it doesn't seem. They have not put forth any testimony – and, I'm sorry, I just cannot think of any evidence that, even if the Court looks at this in the light most favorable to the government – The Tape that they have there was basically Mr. Hadley and Mrs. Hadley having a discussion as to what she was going to testify to. And Mrs. – And we don't – Out of several hundred conversations, they just bring out that one conversation, Your Honor, basically that one conversation. It sounds like an ongoing conversation, your Honor, basically there – basically most likely about this case and everything. We know that she was speaking to her lawyer. Plus Ms. Combs' name is mentioned in that. So I have to believe that that has something to do with it as well. Of course we have no evidence as to what that is.
> We have no evidence except for the fact that the gun is in the house. And I don't believe that meets the burden of proof that the government has that my client has it. My client is not the only one that is in that house. There are other people that have been in that house. Mrs. Hadley is obviously the main one who led them to the gun.

(Court File No. 39, p. 138-40). Hadley's counsel argued the Government failed to establish actual and constructive possession. His performance was therefore not deficient on the ground Hadley now offers.

With respect to appellate counsel, not every non-frivolous argument must be raised on

12

appeal; rather, "[o]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome." *Hemphill v. Hudson*, 483 F. App'x 118, 120 (6th Cir. 2012) (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)). Given clear evidence established Hadley's dominion over the premises, it was not deficient performance to forgo the argument the evidence was insufficient to sustain his conviction, particularly when there were more compelling arguments to present regarding admission of evidence at trial. Accordingly, Hadley fails to establish ineffective assistance of counsel on the part of his trial and appellate counsel for failing to argue the evidence was insufficient to sustain his conviction.

**2. Failure to Offer Pattia's Sentencing Testimony**

Hadley argues his trial counsel was ineffective for not filing a Rule 33 motion for a new trial on the basis of new evidence; that is, Pattia's sentencing testimony.[2] Hadley also argues appellate counsel should have "moved the courts with such critical evidence" on appeal. Hadley contends Pattia's testimony was "new to the facts established in Petitioner Hadley's trial, and would have most definitely been favorable to his defense had it been available at the time of his jury trial" (Court File No. 70, p. 16). However, Hadley again fails to establish prejudice.

To prevail on a Rule 33 motion based on new evidence, a defendant must show "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Blackwell*, 459 F.3d 739, 768-69 (6th Cir. 2006) (citations and quotations omitted).

---

[2] A motion for a new trial was filed, but not on the basis of Pattia's testimony. The Court denied this motion (Court File No. 28).

Here, Hadley's motion would have failed on at least two grounds. First, Pattia's testimony could have been discovered before trial with due diligence. Indeed, her testimony changed at the detention hearing before trial. Her testimony therefore fails to qualify as "newly discovered evidence" under Rule 33. More to the point, however, Pattia's testimony would not "likely produce acquittal." Contrary to Hadley's argument, Pattia did not deny making the allegation to the officers who responded to the Hadley residence. Rather, she claimed she could not remember the events or what was said (*see* Court File No. 41, Sent. Hrg., p. 76) ("[S]he has not testified that she lied; she has testified that she does not recall what happened, she has testified that she does not remember, she has testified that she made some assumptions, but she never said she lied.").[3] She also merely testified to "assuming" he was using a gun, because she felt something against her head. Were this testimony before the jury, the Court finds it unlikely such testimony would have created a reasonable doubt, considering evidence of her statement immediately after the incident. Further, the Court was also in a position to assess Pattia's credibility as a witness, and found her testimony unconvincing (*see id.* at p. 77) ("And even though she might subject herself to prosecution by admitting that she had lied in her testimony before the grand jury and she had lied to the police officers, with the love that she has for her husband, I'm not sure that she would not be willing to [tell the police Hadley had a firearm] if she had in fact not been telling the truth at the beginning."). Hadley therefore did not suffer prejudice from trial counsel's failure to file a Rule 33 motion on this basis.

With respect to appellate counsel, as the Sixth Circuit held on appeal, even if Pattia's testimony were entirely stricken from the record, there was sufficient evidence of constructive

---

[3] After the Court made this observation on the record, Pattia stood up in the gallery and stated she did in fact lie to the officers. However, this does not constitute testimony under oath and is not evidence.

14

possession to sustain Hadley's conviction. *Hadley*, 431 F.3d at 507. Then regardless of whether Pattia saw a gun or lied to the responding officers, the fact a firearm was present in Hadley's residence is alone sufficient to sustain his conviction. Accordingly, Hadley fails to show prejudice on this ground, and therefore fails to establish ineffective assistance of counsel.

### 3. Actual Innocence

Hadley claims he is actually innocent of being a felon in possession of a firearm. At the outset the Court notes there is a difference between a "gateway claim" and a "freestanding claim" of actual innocence. *See House v. Bell*, 547 U.S. 518 (2006). The United States Supreme Court has previously recognized a gateway claim of actual innocence, which exists when a petitioner attempts to avoid a procedural bar that would otherwise preclude him from bringing other claims. *Id.* at 536-37; *Bousley v. United States*, 523 U.S. 614, 623 (1998). Raising actual innocence to avoid a procedural bar serves as a gateway for a petitioner to argue his procedurally defaulted claims before the habeas court. *House*, 547 U.S. at 536-37. Thus, an actual innocence gateway claim is a complement to the "cause and prejudice" standard which permits a petitioner to raise an otherwise procedurally barred claim. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001) ("A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence.").

A freestanding claim of actual innocence is an attempt to prove innocence outright. *See House*, 547 U.S. at 554-55; *see also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (recognizing the possibility of a freestanding actual innocence claim). Nevertheless, a freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. *House*, 547 U.S. at 555

(concluding "that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it"). The *House* Court did, however, establish that the standard for any freestanding innocence claim would be "'extraordinarily high.'" *Id.* (quoting *Herrera*, 506 U.S. at 417). Although the Court did not further explain the "extraordinarily high" standard, it did indicate the standard for a freestanding claim would be higher than the standard for a successful gateway innocence claim. *Id.* ("The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*."). Thus, if Hadley is unable to meet the gateway standard, there is no doubt he will be unable to meet the freestanding standard.

To establish a gateway innocence claim a petitioner "must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Bousley v. United States*, 523 U.S. at 623 (To establish a gateway actual innocence claim a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him") (internal quotations and citations omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* at 623. In addition, to establish a gateway claim, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.[4]

---

[4] A circuit split has developed over whether "new" evidence includes only newly *discovered* evidence, or all evidence not presented at trial. *Cleveland v. Bradshaw*, 693 F.3d 626, 632 (6th Cir. 2012); *see also Connolly v. Howes,* 304 F. App'x 412, 419 (6th Cir.2008) (Sutton, J., concurring).

Hadley again points to Pattia's sentencing testimony as new evidence of actual innocence. However, as the Court concluded above, Pattia's testimony is hardly evidence that would have created a reasonable doubt as to Hadley's guilt. Her claims of ignorance regarding the events of the night do little to refute the statements she provided the officers who responded to the scene. Additionally, her testimony she "felt something," but did not actually see the firearm, is not evidence that meets the "extraordinarily high" bar required to establish actual innocence. In addition, the Sixth Circuit determined, even without Pattia's statement to the officers, the evidence of constructive possession was sufficient to sustain Hadley's conviction. Any doubt Pattia's testimony would have created to Hadley's *actual* possession would have done nothing to counter the ample evidence of his *constructive* possession. Accordingly, Hadley has failed to establish his actual innocence.

## IV. CONCLUSION

For foregoing reasons, none of the grounds asserted by Hadley supports a finding his counsel was defective, either at trial or on direct appeal, nor has he established actual innocence. For the reasons stated above, Hadley's sentence was not imposed in violation of the Constitution or laws of the United States nor is it otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will therefore be **DENIED** (Court File No. 69).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Hadley for leave

---

This issue has not been definitively decided by the Sixth Circuit, *id.*, but it has suggested in the past such evidence need only be newly presented, *Souter v. Jones*, 395 F.3d 577, 595-96 n.9 (6th Cir. 2005). The Court will assume for the purposes of this motion, the evidence need not be "newly discovered."

to proceed in forma pauperis on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

    **An order shall enter.**

    **/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**